IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:07-CV-1127-WKW[WO] |
| | ) | |
| RUSSELL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Russell Corporation's ("Russell") Motion for Summary Judgment. (Doc. # 17.) The motion is accompanied by a Memorandum of Law (Doc. # 18) and an evidentiary submission (Doc. # 20). Plaintiff Jerry Baker ("Baker") filed a Brief in Response (Doc. # 31) and an evidentiary submission (Doc. # 30), to which Russell filed a Reply (Doc. # 34). Mr. Baker has sued Russell for retaliation and racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"), and for negligence under state law. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Russell's Motion for Summary Judgment is due to be granted.

**I.   JURISDICTION AND VENUE**

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming*

*Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

### III.  FACTS AND PROCEDURAL HISTORY

The following are the relevant facts.[1] Mr. Baker, an African-American male, was employed for twenty-six years by Russell as a supervisor in Russell's Alexander City, Alabama, Focused Factory. As part of his job, Mr. Baker was responsible for the time and attendance records of the approximately twenty-five employees whom he supervised.

Employees at the Focused Factory clocked in and out at the beginning and end of their shifts by using a swipe card. Each swipe was recorded electronically in a system that tracked employee time and attendance. Employees also manually recorded their time for purposes of incentive benefits. Mr. Baker had the authority to change or modify the electronic time sheets of the employees he supervised to correct errors. He also was responsible for disciplining employees who did not comply with Russell's attendance policy.

One employee Mr. Baker supervised, Anthony Thomas ("Thomas"), had attendance problems, and, on occasion, Mr. Baker changed his time sheets. In August 2005, Jeri Whaley Wink ("Wink"), the human resources manager, received complaints about Mr. Thomas's tardiness. (Wink Aff. ¶ 3.) Ms. Wink pulled Mr. Thomas's electronic time sheets and noticed that Mr. Baker had changed several entries to reflect that Mr. Thomas had reported

---

[1] The facts are presented in the light most favorable to Mr. Baker. *See Celotex*, 477 U.S. at 322.

on time to his shift, leading Ms. Wink to suspect that Mr. Baker was improperly crediting Mr. Thomas for time not worked. (Wink Aff. ¶ 3.)

To ensure that it was not a misunderstanding, Ms. Wink conducted additional training on the electronic time sheet system in September 2005. (Baker Dep. 68; Wink Aff. ¶ 4.) The director of manufacturing, Crystal Williams ("Williams"), followed up with management through a memorandum stressing the importance of proper timekeeping. (Williams Aff. ¶ 3) Mr. Baker's alterations to Mr. Thomas's time sheets ceased for a period of time, during which Mr. Thomas accumulated several tardies, leading to a written warning regarding his attendance. (Wink Aff. ¶ 5.)

In January 2006, Karen Griffin ("Griffin"), a payroll clerk, noticed discrepancies between Mr. Thomas's electronically logged time and the time he recorded manually, so she monitored Mr. Thomas's records for a few weeks. (Roth Aff. ¶ 3.) When the problem continued, Ms. Griffin notified Mr. Baker and reminded him that it was his responsibility to monitor his employees' timekeeping. (Roth Aff. ¶ 3.)

The discrepancies continued, and Ms. Griffin reported the problem to Kris Roth ("Roth"), senior manager of Industrial Engineering, who also warned Mr. Baker about his responsibility to monitor his employees' timekeeping. (Roth Aff. ¶¶ 2, 4.) Mr. Thomas continued to log in tardy or not at all, so Ms. Roth brought the issue to the attention of Ms. Wink once again, who began monitoring Mr. Thomas's electronic time sheets. (Roth Aff. ¶ 5; Wink Aff. ¶ 6.)

Ms. Wink witnessed several instances in which it appeared that Mr. Thomas was tardy and that Mr. Baker altered his time sheet to remove the tardy sign-in. (Wink Aff. ¶ 7.) On March 31, 2006, Ms. Wink notified Ms. Williams that Mr. Baker was not enforcing the attendance policy and, furthermore, was actively changing Mr. Thomas's time sheets, citing several specific examples. (Williams Aff. ¶ 4.) On April 7, 2006, Ms. Wink informed Ms. Williams that on April 3, 2006, Ms. Roth and another employee saw Mr. Thomas arrive at 7:00 a.m. for his 6:00 a.m. shift. (Williams Aff. ¶ 5.) Ms. Wink further informed Ms. Williams that Mr. Thomas did not clock in and that Mr. Baker entered 6:00 a.m. as the clock-in time for Mr. Thomas. (Williams Aff. ¶ 5.)

A review of time sheet edits entered by all supervisors demonstrated that Mr. Baker was the only supervisor making changes that credited employees with time not actually worked. (Williams Aff. ¶ 7.) On April 17, 2006, Ms. Williams decided to fire Mr. Baker (Williams Aff. ¶ 8), and asked Ms. Wink and Michele Warren ("Warren") to inform Mr. Baker of his termination (Wink Aff. ¶ 10).

On April 18, 2006, Ms. Wink and Ms. Warren had a meeting with Mr. Baker in which Ms. Wink questioned him about Mr. Thomas's time sheets. Mr. Baker was unable to explain why he made most of the changes.[2] (Baker Dep. 30-31, 33-34; Wink Aff. ¶ 10.)

---

[2] Mr. Baker did explain his alteration of Mr. Thomas's February 14, 2006 end time, claiming that Mr. Thomas was planning to leave early and clocked out, but then immediately changed his mind and returned to work without clocking back in. (Baker Dep. 73-76.) When questioned about why Mr. Thomas did not clock in, Mr. Baker suggested that, perhaps, Mr. Thomas's card was not working. (Baker Dep. 75-76.)

5

During this meeting, Mr. Baker reiterated his concern regarding perceived race-based pay disparities (Pl. Dep. 31-32; Pl. Summ. J. Resp. 7 (Doc. # 31)).[3] At the end of the meeting, Ms. Wink "informed [Mr.] Baker that his employment with Russell was being terminated." (Wink Aff. ¶ 10; Pl. Dep. 30.)  Mr. Baker was replaced by a Caucasian employee. (Keel Dep. 61-62.)

On December 27, 2007, Mr. Baker commenced this lawsuit alleging federal-law claims for retaliation and race discrimination in violation of Title VII (Count I) and § 1981 (Count II), and state-law claims for negligence.[4]  Russell has denied discrimination and retaliation and has moved for summary judgment on all claims.

## IV.  DISCUSSION

Mr. Baker has no direct evidence of racial discrimination or retaliation.[5] Therefore, the analysis is governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To avoid summary judgment on both claims, Mr.

---

[3] Mr. Baker previously raised this issue with his supervisor, Larry Keel, "some time in 2006" when he complained that Ron Templeton, a Caucasian supervisor, and other unnamed Caucasian supervisors, earned higher wages than he earned. (Pl. Dep. 26-29.)  It is noteworthy also that, during his deposition, Mr. Baker complained about racially-derogatory graffiti on walls and in the bathroom (Baker Dep. 37-40), but he did not raise this complaint during the April 18 meeting or with management at any other time (Baker Dep. 40-41).

[4] Mr. Baker expressly has abandoned his state-law claims. (Pl. Summ. J. Resp. 25.)  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

[5] Mr. Baker brings his federal-law claims under both Title VII and § 1981.  These claims can be analyzed together because the burdens of proof are the same.  *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) ("[A]s we have repeatedly held, '[b]oth of these statutes [(*i.e.*, section 1981 and Title VII)] have the same requirements of proof and use the same analytical framework.'" (second and third alterations in original) (citation omitted)).

Baker must establish a *prima facie* case. If Mr. Baker establishes a *prima facie* case, Russell must respond with a legitimate, non-discriminatory, non-retaliatory reason for the termination. *Id.* at 802. To ultimately survive summary judgment on both claims, Mr. Baker must raise a genuine issue of material fact that Russell's articulated reason for his dismissal was pretextual, and that race and retaliation were the real reasons for his termination. *Id.* at 803.

The *prima facie* cases for claims of retaliation and racial discrimination are addressed separately, below. However, because as to both claims the evidence and arguments are largely the same with respect to the second and third components of the *McDonnell Douglas* burden-shifting framework, these claims are discussed together for the remainder of the analysis.

### A. Retaliation: *Prima Facie* Case

To prove a *prima facie* case of retaliation, Mr. Baker must show that (1) he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) the adverse action was causally related to the protected activity. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998). A causal link can be established through evidence "'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). "[T]o show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the

protected conduct at the time of the adverse employment action," *id.*, and that there is a "'close temporal proximity' between the protected expression and [the] adverse . . . action," *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)).  Only the third element is in contention.  (Def. Summ. J. Br. 13-14 (Doc. # 18).)

As to the third element, Mr. Baker advances two arguments.  First, he attempts to establish causal relation by asserting that "some time in 2006" (Baker Dep. 26-27) he complained to his supervisor, Larry Keel ("Keel"), that he thought he was being paid less than Caucasian supervisory employees, in particular Ron Templeton, and that the pay disparity was racially motivated.  (Baker Dep. 27, 29.)  Russell, however, argues that Mr. Baker has not submitted any evidence that negates Ms. Williams's attestations that she "made the decision to terminate [Mr.] Baker's employment" (Williams Aff. ¶ 8), and that, when she made that decision, she did not know about Mr. Baker's prior complaints of race discrimination (Williams Aff. ¶ 9; Wink Aff. ¶ 10).  Absent any evidence that Ms. Williams knew about Mr. Baker's prior complaint to Mr. Keel about perceived racially-based pay disparities, Russell asserts that Mr. Baker cannot demonstrate the requisite causal connection.

Second, Mr. Baker asserts that, during the April 18 meeting with Ms. Wink and Ms. Warren, he reasserted in general terms his complaint "that he 'wasn't getting compensation like white supervisors.'"  (Pl. Summ. J. Resp. 7 (quoting Pl. Dep. 31-32).)  Mr. Baker contends that his termination, which occurred at the end of this meeting, was in retaliation

8

for saying that he was paid less than Caucasian supervisors and that a causal link is established by the temporal proximity of the two occurrences. (Pl. Summ. J. Resp. 7-8.)

Mr. Baker's first contention need not be addressed because the retaliation claim will be permitted to proceed to the next step of the *McDonnell Douglas* test based upon Mr. Baker's second contention. Namely, given the temporal proximity between Mr. Baker's arguably protected speech (his pay complaint during his termination meeting) and the adverse employment action (his firing at the end of this meeting), the court will assume, without deciding, that Mr. Baker has established the requisite causal connection and, thus, a *prima facie* case.[6]

## B.  Racially Discriminatory Termination: *Prima Facie* Case

Mr. Baker is correct (Pl. Summ. J. Resp. 20) that he can establish a *prima facie* case of racial discrimination through evidence that "(1) he is a member of a protected class[,] (2) he was qualified for the position[,] (3) he suffered an adverse employment action[,] and (4) he was replaced by a person outside his protected class[.]" *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Indeed,

---

[6] It could be argued that the adverse employment action was Russell's initial decision to call the meeting with the intent of terminating Mr. Baker. In that case, Mr. Baker's complaint about pay disparities would have occurred after the adverse action and could not be used to established retaliatory intent. *See Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999) ("[The plaintiff] must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that 'the employer was actually aware of the protected expression at the time it took adverse employment action.'" (citation omitted)); *see also Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.").

9

Russell has not challenged Mr. Baker's evidentiary ability to establish a *prima facie* case on his discriminatory termination claim, but instead has asserted that Mr. Baker cannot demonstrate pretext. (Def. Summ. J. Br. 14-15.) The court, thus, will assume, without deciding, that Mr. Baker has established a *prima facie* case on this claim.

### C. The Asserted Non-Discriminatory, Non-Retaliatory Reason for Mr. Baker's Termination

Russell contends that, "assuming *arguendo* that [Mr. Baker] can establish a prima facie case of discrimination or retaliation" (Def. Summ. J. Br. 15), he is unable to raise a genuine issue of material fact that Russell's proffered reason for his termination is pretextual. Russell asserts that it legitimately, for a non-discriminatory and non-retaliatory reason, fired Mr. Baker based upon its investigation and conclusion that he "deliberately falsif[ied] [Mr.] Thomas's timesheets." (Williams Aff. ¶ 8; *see also* Def. Summ. J. Br. 15; Def. Summ. J. Reply 5 (Doc. # 34).) The court finds, and no contrary argument has been advanced, that Russell has "clearly set forth, through the introduction of admissible evidence," the reason for Mr. Baker's termination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The court further finds that the properly-supported reason is legitimate, non-discriminatory and non-retaliatory.

### D. Pretext

Because Russell has satisfied its burden of producing competent evidence of a legitimate, non-discriminatory and non-retaliatory reason for Mr. Baker's termination, the

10

burden shifts to Mr. Baker to "meet that reason head on and rebut it[.]" *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  To satisfy his burden on summary judgment, Mr. Baker "must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reason[] given by [Russell] w[as] not its true reason[], but w[as] a pretext for discrimination" or retaliation.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (brackets added).  "The focused inquiry in the last step requires the plaintiff to demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Mr. Baker presents multiple reasons why he believes that he has met his burden.  However, based upon careful consideration of the record as a whole, the court finds that these reasons are insufficient to create a genuine issue of material fact as to whether Russell's proffered reason for Mr. Baker's termination was pretextual.  The following points are illustrative.

Some of Mr. Baker's arguments relate to the accuracy of Ms. Williams's interpretation of the information conveyed to her with respect to the allegations that Mr. Baker falsified Mr. Thomas's time records.  For example, Mr. Baker says that a perfectly innocent reason for his handwritten alterations on Mr. Thomas's time sheets, but one Ms. Williams refused to

11

entertain, was that the time clock was malfunctioning, as frequently was the case. (Pl. Summ. J. Resp. 14-15; *see also* Pl. Summ. J. Resp. 23 ("Russell managers . . . knew that there were multiple legitimate reasons to alter an employee's time, including that the card readers did not work, a card was lost or damaged, or an employee forgot the card.").) Mr. Baker also points to evidence that Ms. Wink, Ms. Warren and Mr. Keel did not concur in Ms. Williams's decision to terminate him, and that Ms. Wink had doubts as to whether Mr. Baker's conduct was intentional. (Pl. Summ. J. Resp. 11-12, 13-14.)

Mr. Baker's arguments quarrel with the wisdom of Russell's decision and challenge the termination as too harsh a penalty. However, the factual issue for resolution "is not the wisdom or accuracy" of Russell's conclusion that Mr. Baker engaged in conduct warranting termination, or the fairness of the termination decision, but only "whether [that conclusion] is an honest one." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). Federal courts "'are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [their] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.'" *Id.* (quoting *Damon*, 196 F.3d at 1361); *see also Hillegass v. The Borough of Emmaus*, No. 01-CV-5853, 2003 WL 21464578, at *5 n.10 (E.D. Pa. June 23, 2003) (While the decision to terminate the plaintiff was "not unanimous, it is clear that a plaintiff cannot demonstrate pretext by simply arguing that the employer's decision was wrong or mistaken since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or

12

competent." (citation and internal quotation marks omitted)).  On this record, the court finds that the fact that Russell rejected an innocent explanation or that there was disagreement among management officials as to the level of discipline to impose on Mr. Baker is not evidence, without more, from which racial or retaliatory animosity can be inferred.  There is nothing more, as is revealed below.

To the extent that Mr. Baker believes that Ms. Wink and the other employees involved in the fact-gathering process were mistaken, the truth or falsity of the accusations as conveyed to Ms. Williams is not the focal point of the inquiry.  "That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted).  As the Eleventh Circuit has made clear on repeated occasions, an "'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Abel v. Dubberly*, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000) (per curiam) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

Here, Russell has submitted evidence that Ms. Williams received information in March 2006 that Mr. Baker had made multiple "deliberate and improper changes" to Mr. Thomas's time sheets.  (Williams Aff. ¶ 4.)  Additionally, on April 7, 2006, Ms. Williams learned that, on April 3, 2006, Mr. Baker manually had entered a clock-in date of 6:00 a.m.

for Mr. Thomas, notwithstanding that Mr. Thomas was observed arriving an hour late for his 6:00 a.m. shift that day, and that Mr. Thomas was paid for that extra hour he did not work. (Williams Aff. ¶¶ 5-7.)  Mr. Baker simply has failed to present any evidence from which it can be inferred that Ms. Williams did not honestly believe, based upon that information, that Mr. Baker falsified Mr. Thomas's time sheets.

As a further offering of pretext, Mr. Baker complains that he was not given notice of the conduct that formed the basis of his termination and that this lack of notice suggests that the reason for his termination is a pretextual post-hoc rationalization.  (Pl. Summ. J. Resp. 16; *see also* Pl. Summ. J. Resp. 15.)  In support of his argument, Mr. Baker relies upon *Hinson v. Clinch County, Georgia Board of Education*, 231 F.3d 821, 831 (11th Cir. 2000), but *Hinson* is distinguishable.  There, the employer acted inconsistently with its past practice of discussing all work issues with the plaintiff when it raised for the first time before the Equal Employment Opportunity Commission ("EEOC") additional reasons for transferring the plaintiff.  *Hinson*, 231 F.3d at 831.  Here, Mr. Baker has not presented any evidence of a past practice akin to that in *Hinson*.

Relatedly, Mr. Baker says that the alleged misconduct that occurred on February 14, 2006, *see supra* note 2, was not reported on his performance evaluation (Pl. Summ. J. Resp. 13 & 16), and that its omission suggests that the reason was made up after his termination as a coverup for discrimination or retaliation.  One problem with this argument, however, is that the performance evaluation indicates that the "rating period" was from January 1, 2005,

14

to December 31, 2005.  (Pl. Ex. J to Doc. # 30.)  Another problem is that the evidence establishes that Ms. Williams, who made the decision to terminate Mr. Baker (Williams Aff. ¶ 8), first received notice of Mr. Baker's alleged falsification of time records on March 31, 2006, which was after the "due date" for the completion of the performance evaluation (Pl. Ex. J to Doc. # 30).  This evidence likewise is insufficient to allow Mr. Baker to take his case to the jury.

Mr. Baker's comparative evidence also fails.  (Pl. Summ. J. Resp. 20-21.)  Mr. Baker identifies Delanna Kelly ("Kelly") and Mr. Keel as individuals whom he says engaged in misconduct similar to his, but who received less severe or no discipline.  Mr. Baker contends that Ms. Kelly is a valid comparator because she supervised an employee who, similar to Mr. Thomas, was tardy and absent on "numerous" occasions, yet Ms. Kelly was not terminated. (Pl. Summ. J. Resp. 21-22.)

It is true that to show pretext, a plaintiff may rely upon evidence of disparate treatment of a similarly-situated employee outside the protected class.  *See Rioux*, 520 F.3d at 1276-77. The inquiry is whether the plaintiff and the comparator were "'involved in or accused of the same or similar conduct and [were] disciplined in different ways.'"  *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  The "quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Maniccia*, 171 F.3d at 1368-69.

15

Applying these principles, Mr. Baker's argument misses the mark. Mr. Baker was not fired because Mr. Thomas was tardy to work; he was fired based upon Russell's good faith belief that he falsified Mr. Thomas's time records. There is no evidence, nor has Mr. Baker argued, that Ms. Kelly falsified her subordinate's time records. Ms. Kelly's alleged infraction, thus, did not involve dishonesty, as did Mr. Baker's. Factually, comparing the two infractions is comparing apples to oranges. Ms. Kelly, therefore, is not a valid comparator and the fact that Russell fired Mr. Baker, but not Ms. Kelly, cannot give rise to an inference of retaliation or race discrimination.

Mr. Keel's conduct upon which Mr. Baker relies also is readily distinguishable from Mr. Baker's. Mr. Baker says that "[Mr.] Keel had also altered [Mr.] Thomas's time on several occasions between December 2005 and April 1, 2006," but "was given a free pass to permit [Mr.] Thomas to come in late and not clock in or out." (Pl. Summ. J. Resp. 23 (citing Wink Dep. 196-97 (Ex. D to Doc. # 30) & Def. Resp. to EEOC Request (Ex. H to Doc. # 30).) The issue, however, is not whether Mr. Keel was given a free pass by allowing a subordinate to short shrift his shift, but whether there is evidence (of which Ms. Williams was aware) that suggests that Mr. Keel falsified Mr. Thomas's time card to reflect that Mr. Thomas had worked the full shift when he had not. There is no such evidence.

The evidence upon which Mr. Baker relies supports the conclusion that, on several occasions when Mr. Thomas forgot to clock in or clock out, Mr. Keel had manually written on Mr. Thomas's time sheets the hours Mr. Thomas worked. Mr. Baker, however, has not

cited any evidence suggesting that, on those particular occasions, Mr. Thomas did not actually work the hours manually recorded by Mr. Keel. Nor has Mr. Baker pointed to any evidence that information was conveyed to Ms. Williams that Mr. Keel had falsified Mr. Thomas's time sheets. To the contrary, Ms. Williams, for example, received specific information that Mr. Thomas was seen arriving at 7:00 a.m. for his 6:00 a.m. shift, but that Mr. Baker's manual entry on Mr. Thomas's time card reflected that Mr. Thomas had arrived on time for his shift. (Williams Aff. ¶ 5.) The evidence with respect to Mr. Keel's manual completion of Mr. Thomas's time card is not accompanied by any evidence from which it can be inferred that the manual completion was incorrect. Mr. Keel, thus, is not a similarly-situated comparator.

Finally, Mr. Baker says that Russell's "tolerance" of racially derogative graffiti in the workplace "is probative of race discrimination and retaliation" (Pl. Summ. J. Resp. 24), but Mr. Baker does not provide any citation to the record to support his argument.[7] The court, however, has read Mr. Baker's deposition testimony and is aware that Mr. Baker has testified that in 2006 he saw racially derogatory graffiti in the bathroom and on a table at the Focused Factory. (*See, e.g.*, Pl. Dep. 39-40, 48.) Mr. Baker admitted that he did not report the graffiti to anyone in management (Pl. Dep. 40-41, 50), and that the graffiti "would disappear" on

---

[7] It "is not the court's function to weed through the summary judgment submissions in search of evidence to support [Mr. Baker's] position," *Foster v. Mid State Land & Timber Co., Inc.*, No. 2:06cv405, 2007 WL 3287345, at * 11 (M.D. Ala. Nov. 5, 2007) (brackets added); (*see also* Uniform Scheduling Order § 2 ("In all briefs . . . , the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court." (Doc. # 8).)

17

occasion (Pl. Dep. 51), and, significantly, he has cited no evidence from which it can be inferred that management knew about it, much less tolerated it.[8]  The record also is devoid of evidence indicating who wrote the graffiti or that the graffiti was connected in any manner to Ms. Williams's decision to terminate Mr. Baker for his conduct that she believed amounted to falsification of Mr. Thomas's time sheets.  On these facts, there is insufficient evidence from which to find that the graffiti is indicative of pretext.

### E.     Summary

For purposes of resolving Russell's Motion for Summary Judgment, the court has assumed, without deciding, that Mr. Baker has made out *prima facie* cases of retaliation and race discrimination.  Even with that assumption, Mr. Baker cannot survive summary judgment on his Title VII and § 1981 claims, as he has failed to raise a genuine issue of material fact that Russell's asserted reason for his termination – *i.e.*, that Mr. Baker falsified his subordinate's time records – is a cover up for retaliation or race discrimination.  Accordingly, summary judgment is due to be entered in favor of Russell on the federal-law claims.  Also, because Mr. Baker has abandoned reliance on his state-law claims, summary judgment is due to be entered in favor of Russell on these claims as well.

---

[8] Ms. Williams, Ms. Roth, Mr. Keel and Ms. Wink testified that they had never heard about or seen racist graffiti at the Focused Factory.  (*See* Williams Dep. 17-18; Roth Dep. 17; Keel Dep. 70; Wink Dep. 32 (Exs. D, E, F & G to Doc. # 30).)

## V.  CONCLUSION

Accordingly, it is ORDERED that Russell's Motion for Summary Judgment (Doc. # 17) is GRANTED.

An appropriate judgment will be entered.

DONE this 6th day of May 2009.

                                        /s/  W. Keith Watkins
                                UNITED STATES DISTRICT JUDGE